[Cite as *State v. Wagner*, 2023-Ohio-1659.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CHER WAGNER

    Appellant

C.A. No.      30067

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 20 07 1780

DECISION AND JOURNAL ENTRY

Dated: May 17, 2023

FLAGG LANZINGER, Judge.

{¶1} Cher Wagner appeals her conviction from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} A grand jury indicted Ms. Wagner on one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of felony murder in violation of R.C. 2903.02(B), with the predicate offense of felonious assault. The charges stemmed from allegations that Ms. Wagner stabbed and killed the victim, K.A., with a knife. Ms. Wagner pleaded not guilty to the charges. The matter proceeded to a jury trial wherein the following evidence was adduced.

{¶3} The following facts were not in dispute at trial. E.S. is Ms. Wagner's former boyfriend, and the former couple got along well. K.A. was a friend of E.S. On the afternoon of June 30, 2020, Ms. Wagner stopped by E.S.'s house on Euclid Avenue for a visit. When Ms. Wagner arrived, K.A. was already present at E.S.'s house. While the testimony differed as to what

transpired between the two women, there was no dispute that Ms. Wagner and K.A. engaged in a physical altercation on the front porch of E.S.'s house. K.A. shoved Ms. Wagner over the porch railing, which caused Ms. Wagner to fall onto the grass in the front yard. E.S. did not see the altercation because he had gone inside to use the restroom, but he came back outside and helped Ms. Wagner up off the ground. Ms. Wagner and K.A. then continued to fight, so E.S. told K.A. to leave. K.A. then walked down Euclid Avenue holding only her wig in her hand.

{¶4} About five minutes later, Ms. Wagner left the front porch of E.S.'s house and either walked or ran toward K.A. The testimony differed as to what happened next. There was no dispute, however, that Ms. Wagner caught up with K.A., and that the women engaged in another physical altercation. During the altercation, K.A. sustained a stab wound to her chest, which punctured her heart. Ms. Wagner then returned to E.S.'s house. Eyewitnesses observed that Ms. Wagner went inside E.S.'s house at least once, and that she came back outside and sat on the front porch. An eyewitness called 911 and identified Ms. Wagner as the person who stabbed K.A. The police arrested Ms. Wagner at the scene and transported her to the police station for questioning.

{¶5} Having reviewed some of the undisputed facts, this Court will now turn to the specific evidence the State presented at trial, which included the testimony of 13 witnesses. First, the State presented testimony from a 911 dispatcher. The 911 dispatcher testified that she received a call on June 30, 2020, around 5:00 p.m. from a man who had just witnessed a stabbing on Euclid Avenue. The State played the 911 call for the jury. In it, the caller stated that he saw a Caucasian woman stab an African American woman. The caller also stated that the woman who stabbed the African American woman was sitting on the front porch of a house down the street from the stabbing.

{¶6}    Next, the State presented testimony from three eyewitnesses, all of whom witnessed at least some of the events. One of the eyewitnesses was the man who called 911. He testified that he was on his way to deliver a pizza when he saw two women fighting on the side of Euclid Avenue. According to him, he made eye contact with K.A., who either mouthed or said "[h]elp me" as he was driving by.  He then slammed on his brakes, got out of his car, and saw Ms. Wagner stab K.A. with a knife. He testified that he heard Ms. Wagner say: "'I told her to stay the f*ck away from my man' or 'away from my house,' something like that." He then called 911 and, when the police arrived, he identified Ms. Wagner as the person who stabbed K.A. with a knife.

{¶7}    The two other eyewitnesses were E.S.'s neighbors, one of whom was also E.S.'s brother. E.S.'s brother testified that he lives almost directly across the street from E.S. According to him, he was working on his front porch on the day of the incident, and he observed two women arguing on E.S.'s front porch. He observed Ms. Wagner yell at K.A. and hit K.A. in the face. K.A. then fought back and pushed Ms. Wagner over the porch railing. He testified that E.S. came outside and tried to stop the women from fighting. E.S then told K.A. to leave, and he saw K.A. walk down the street. A few minutes later, he saw Ms. Wagner grab a metal object from E.S.'s front porch and start to walk down the street toward K.A. He testified that he did not see what happened next. On cross-examination, E.S.'s brother testified that K.A. did not act aggressively toward Ms. Wagner while they were on E.S.'s front porch, but that Ms. Wagner "just kept coming after" K.A. He also testified on cross-examination that Ms. Wagner walked back to E.S.'s house with the metal object still in her hand.

{¶8}    The other eyewitness was E.S.'s next-door neighbor. She testified that she was watching television inside of her home when she heard people fighting outside. She then went onto her front porch and saw Ms. Wagner and K.A. fighting on E.S.'s front porch. She testified that

K.A. pushed Ms. Wagner over the porch railing, and that E.S. came outside and tried to break up the fight. She also testified that K.A. started walking down the street with her wig in her hand, and that she saw Ms. Wagner digging through her purse looking for something. She testified that Ms. Wagner ran down the street toward K.A. a few minutes later. She testified that Ms. Wagner caught up to K.A., that an altercation ensured, and that she saw K.A. fall to the ground. She then saw Ms. Wagner walk back to E.S.'s house and go inside.

{¶9} The State then presented testimony from two police officers who responded to the scene. They each testified that the eyewitnesses on the scene identified Ms. Wagner as the person who was fighting with and/or stabbed K.A. One of the officers testified that a small knife fell out of Ms. Wagner's purse while he was arresting her, which he collected as evidence. The State played portions of the bodycam videos from the officers for the jury. In them, witnesses, including the pizza delivery man, identified Ms. Wagner as the person who stabbed K.A.

{¶10} Next, the State presented testimony from three women who were driving down Euclid Avenue when they saw a man (i.e., the pizza delivery man) trying to flag down motorists for help. The women stopped and got out of their car. One of the women heard the man say: "she just stabbed her[,]" referring to Ms. Wagner stabbing K.A. She then heard Ms. Wagner say: "I stabbed that bitch[,]" and saw a knife in Ms. Wagner's hand. Two of the other women testified that Ms. Wagner had a knife in her hand and blood dripping from her forearm and hands. These witnesses also testified that they tried to render aid to K.A., who was lying on the ground struggling to breathe.

{¶11} The State then presented testimony from a detective who took pictures at the scene, as well as from a forensic scientist who conducted DNA comparisons on some of the physical evidence collected from the scene. The forensic scientist testified that there was no blood on the

knife collected from the scene, but that the DNA found on the knife was consistent with Ms. Wagner. One of the detectives who responded to the scene testified that he was not surprised that the knife had no blood on it because witnesses saw Ms. Wagner go inside E.S.'s house after the incident. The detective testified that Ms. Wagner could have washed the knife off. The detective also testified that witnesses observed blood on Ms. Wagner's arm, which was not present when the police arrived. He testified that this suggested that Ms. Wagner cleaned herself off after the incident.

{¶12} That detective also interviewed Ms. Wagner at the police station. The State played the video from that interview for the jury. In it, Ms. Wagner denied fighting with K.A. Ms. Wagner stated that K.A. attacked her, that she (Ms. Wagner) did not defend herself, and that she did not stab K.A. Ms. Wagner also stated that she did not touch a knife, and that her DNA would not be on the knife found at the scene.

{¶13} Lastly, the State presented testimony from the deputy medical examiner who performed the autopsy on K.A. She testified that K.A. sustained a puncture wound to her heart, which caused K.A.'s death.

{¶14} The defense then presented testimony from two witnesses: E.S. and Ms. Wagner. E.S. testified that he, K.A., and Ms. Wagner were hanging out on his front porch drinking beer. He testified that he went inside to use the restroom, and that no one was fighting before he went inside. E.S. testified that Ms. Wagner was lying on the ground in his front yard when he came back outside. He then helped Ms. Wagner get up, and Ms. Wagner and K.A. started fighting again. E.S. testified that he told K.A. to leave, and that K.A. left with her wig in her hand. E.S. testified that Ms. Wagner started walking toward K.A. about five minutes later. He testified that he did not see anything in Ms. Wagner's hands when she left his front porch, nor did he see what happened once

Ms. Wagner caught up with K.A. down the street. E.S. acknowledged, however, that Ms. Wagner had a knife with her that day. E.S. testified that Ms. Wagner came back to his house, went inside, and possibly used the restroom before the police arrived.

{¶15} Ms. Wagner then testified on her own behalf. Ms. Wagner testified that she, E.S., and K.A. were sitting on E.S.'s front porch drinking beer while she was waiting for her bus to arrive. Ms. Wagner testified that she was not engaging with K.A., but that K.A. threw a beer in her face as she tried to walk through the doorway. K.A. then pushed her over the porch railing. Ms. Wagner testified that she got up and went back onto the front porch, and that E.S. told K.A. to leave.

{¶16} According to Ms. Wagner, after K.A. left, she started looking through her purse and noticed that her knife was missing. She then walked after K.A. and asked K.A. for her knife back. K.A. handed Ms. Wagner the knife, but then immediately pulled it back and a struggle ensued. Ms. Wagner testified that there was a "scuffl[e,]" and that K.A. ended up falling backward onto the ground. Ms. Wagner testified that she did not know what was wrong with K.A., so she went back to E.S.'s house to retrieve her phone because she wanted a flashlight.

{¶17} During cross-examination, Ms. Wagner testified that her hands and K.A.'s hands were both on the knife when it went into K.A.'s chest, and that this was an accident. Ms. Wagner admitted that she lied to the police about what happened because she did not want to incriminate herself. Ms. Wagner acknowledged that this was the first time she had provided this version of the events, having previously denied having a knife or fighting with K.A. Ms. Wagner also testified that the eyewitnesses who testified at trial were lying.

{¶18} After hearing the evidence, the jury found Ms. Wagner guilty of the charges. The trial court merged the felonious-assault count with the felony-murder count for purposes of

sentencing. The trial court then sentenced Ms. Wagner to life imprisonment with parole eligibility after 15 years. Ms. Wagner now appeals, raising one assignment of error for this Court's review.

II.

ASSIGNMENT OF ERROR

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19}   In her sole assignment of error, Ms. Wagner challenges the weight of the evidence presented at trial. When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶20}   Ms. Wagner argues that the jury lost its way because she did not knowingly cause physical harm to K.A. Ms. Wagner acknowledges that she was holding the knife when K.A. was stabbed, but she argues that "there was a struggle of some sort over the knife which, through misadventure, led to K.A. being stabbed by the knife." Ms. Wagner argues that no eyewitnesses saw her stab K.A., and that even the pizza delivery man could not clearly describe the actual stabbing, nor could he contradict her version of the events.

{¶21}   Ms. Wagner's argument lacks merit. As set forth in this Court's recitation of the State's evidence at trial, multiple witnesses observed Ms. Wagner fighting with K.A., and one eyewitness (i.e., the pizza delivery man) testified that he saw Ms. Wagner stab K.A. That witness

immediately called 911 and informed the 911 dispatcher that he saw a woman (whom he later identified as Ms. Wagner) stab another woman (whom he later identified as K.A.). Other witnesses who arrived on the scene almost immediately after the stabbing testified that they heard Ms. Wagner say that she stabbed K.A. and/or that they saw a knife in Ms. Wagner's hand and blood on her forearm and hands. Additionally, the State presented evidence indicating that Ms. Wagner's DNA was on the knife. Moreover, Ms. Wagner testified at trial and admitted that she lied to the police because she did not want to incriminate herself. While Ms. Wagner claimed that she did not intend to stab K.A. and that this was an accident, the jury was not required to accept her version of the events. *See State v. Mattle*, 9th Dist. Summit No. 30262, 2023-Ohio-1352, ¶ 22, quoting *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20 (stating that a trier of fact is "free to believe all, part, or none of the testimony of each witness."). Instead, the jury was free to believe the State's version of the events, which was supported by the testimony of multiple witnesses. *Id.* This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events. *State v. Steible*, 9th Dist. Lorain No. 21CA011787, 2023-Ohio-281, ¶ 20 ("[T]his Court has repeatedly held that the trier of fact is in the best position to evaluate the credibility of the witnesses and we will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe certain witnesses' testimony."). Having reviewed the record, this Court concludes that this is not the exceptional case in which the evidence weighs heavily against Ms. Wagner's conviction. *Otten*, 33 Ohio App.3d at 340. Accordingly, Ms. Wagner's assignment of error is overruled.

III.

**{¶22}** Ms. Wagner's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.